F5b4Spac

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

THE LAW OFFICES OF SPAR &
BERNSTEIN, P.C.,

                    Plaintiff,

          v.                          15 CV 1289(WHP)


ADAM S. HANDLER,

                    Defendant.

------------------------------x
                                  New York, N.Y.
                                  May 11, 2015
                                  11:35 a.m.

Before:

               HON. WILLIAM H. PAULEY III,

                                  District Judge

                    APPEARANCES

ARENT FOX LLP
     Attorneys for Plaintiff
BY:  EUGENE R. SCHEIMAN
     STEVEN S. KAUFMAN


LAW OFFICE OF JAMES T. SCALISE
     Attorneys for Defendant
BY:  JAMES T. SCALISE

F5b4Spac

1          (In open court)

2          THE DEPUTY CLERK:  Matter on for a pre-motion

3   conference, Law Offices of Spar & Bernstein versus Handler.

4          Will counsel for the plaintiff state their appearance

5   for the record.

6          MR. KAUFMAN:  Yes, sir.

7          Good morning, your Honor.  Steve Kaufman, Kaufman &

8   Company, here for the plaintiff.

9          MR. SCHEIMAN:  Good morning, your Honor.  Eugene

10  Scheiman, Kaufman & Company, for plaintiff.

11         THE COURT:  Good morning, gentlemen.

12         MR. SCALISE:  Good morning, your Honor.  James T.

13  Scalise for the defendant.

14         THE COURT:  Good morning, Mr. Scalise.

15         All right.  This is a pre-motion conference, and the

16  parties have also raised some discovery issues.

17         Mr. Kaufman or Mr. Scheiman, do you want to be heard?

18         MR. KAUFMAN:  Yes, your Honor.

19         THE COURT:  You can remain seated.  Just pull the

20  microphone to you.

21         MR. KAUFMAN:  I was going to discuss the pre-motion

22  letter with respect to the liens, and Mr. Scheiman was going to

23  address the discovery issues.

24         THE COURT:  All right.  That's fine.

25         MR. KAUFMAN:  I can tell you, your Honor, that we

1     have, as a predicate to both of them, worked very hard over the

2     last number of weeks since we have been in court to try to

3     narrow the issues for the scheduled preliminary injunction

4     hearing.  And we believe, as of this morning, although this has

5     been a moving target -- sometimes we have agreement, and

6     sometimes there isn't agreement -- but as of this morning, we

7     understand we do have agreement on several issues that could be

8     the subject of an agreement and a possible order, which would

9     then narrow the dispute that remains.  As we narrow the dispute

10    that remains, we, to some extent, can narrow the specific

11    material that needs to be expedited in terms of discovery.

12    We're ultimately going to need it but not on the expedited

13    basis that we need it for this hearing.  So I wanted the Court

14    to be aware that that is somewhat of a moving part that would

15    affect discovery, but Mr. Scheiman can address that.  I just

16    wanted the Court to be aware of that.

17          With respect to the pre-motion hearing request on the

18    lien, your Honor, this case is here because of plaintiff's

19    claims for the misconduct of the defendant, and that's why the

20    preliminary injunction motion is pending.

21          THE COURT:  Let's back up for one moment.

22          MR. KAUFMAN:  Yes.

23          THE COURT:  Is there now agreement, as it appeared to

24    me from emails that there had been prior to these letters, that

25    an escrow account is going to be maintained?

1          MR. KAUFMAN:  We understand that the defendant is

2    willing to agree --

3          THE COURT:  MR. Scalise --

4          MR. KAUFMAN:  -- as to -- I'm sorry.  I will wait.

5          THE COURT:  -- is your client going to set up an

6    escrow account today and deposit all funds received from

7    clients who were formerly clients of Spar & Bernstein?

8          MR. SCALISE:  Yes, your Honor.  He actually has that

9    account today.  He's had it because there have been some funds

10   that have come into that account.  He has never disputed that.

11   He has always agreed to keep those funds there until either we

12   have an agreement between the parties as to how that is going

13   to be split or an order from a court of competent jurisdiction.

14   That has never been the issue.

15          I believe what plaintiff is trying to do is get my

16   client to set up a special dedicated account, which I think

17   would be overburdensome to order him to do that.  He is a

18   lawyer.  He has his own ethical obligations as it relates to

19   his attorney trust accounts, your Honor.

20          THE COURT:  Why would it be so burdensome to open an

21   escrow account relating to this specific dispute?

22          MR. SCALISE:  Well, your Honor --

23          THE COURT:  You can remain seated.  Just pull the

24   microphone towards you.

25          MR. SCALISE:  Thank you, Judge.

1    There would be another set of bookkeeping that is

2    required.  If that is something that the Court is asking that

3    he do, I do not believe that that would be a problem.

4    Certainly, he could probably open up another escrow account for

5    which simply these transfer cases moneys go into.

6        MR. KAUFMAN:  Your Honor, may I address that?

7        THE COURT:  It is not necessary.

8        I am going to enter an order.  I'm going to direct

9    Handler to establish an escrow account regarding the cases at

10   issue here and funds received in connection with any of those

11   cases, and I'm going to further direct Handler to provide a

12   weekly report as to what moneys and from what sources have been

13   deposited into the account.  So that's issue one.

14       At the end of the day, that's better for Mr. Handler

15   than having plaintiff's counsel wading through his escrow

16   account later about what actual balances are there and what

17   moneys belong where.

18       MR. SCALISE:  Thank you, Judge.  I would agree on

19   that.

20       With respect to the weekly reports, those are weekly

21   reports to the plaintiff, obviously?

22       THE COURT:  Yes.

23       MR. SCALISE:  Thank you.

24       MR. KAUFMAN:  So, your Honor, as I understand it then,

25   we would get information on the deposits weekly and that these

1    would be funds that represent the fees in each of these cases

2    that would all go into this account?

3            THE COURT:  Correct.

4            MR. KAUFMAN:  Okay.

5            THE COURT:  Correct.  They're going to sit there until

6    there is some resolution.

7            MR. SCALISE:  Your Honor, with respect to that,

8    certainly the Court would want funds that belong to the client

9    to be disbursed to the clients as promptly as possible and just

10   be holding on to the disputed amounts?

11           THE COURT:  Of course.

12           MR. SCALISE:  Your Honor, thank you.

13           THE COURT:  Of course.

14           If this litigation continues for a couple of months,

15   then I'm going to further direct that as Mr. Handler receives

16   bank statements for the account, he is to provide a copy of the

17   bank statements to plaintiff's counsel.

18           All right.  Now, let's turn to the question I think,

19   Mr. Kaufman, that you were beginning to address, this

20   prejudgment attachment.

21           MR. KAUFMAN:  These are the portion of the fees, your

22   Honor, that we have been talking about that would be fees

23   beyond a lien amount for work performed by the Spar & Bernstein

24   firm before the case left.  It is our view that the entirety of

25   the fees should be deposited into the escrow account, as I

1    believe your Honor should just.  And we would expect those to

2    be remaining in escrow until the issue of damages is decided in

3    this case or unless the parties reach an agreement on that.

4    The reason is we believe we can satisfy -- first of all, we can

5    satisfy the requirements that the Court has jurisdiction to so

6    order.  And we believe the Court clearly does.  There's

7    precedent, and there's reason for it.  We believe that the

8    amounts that will be in dispute on the damages, meaning the

9    amounts of the loss that Spar & Bernstein has beyond the lien

10   value, is going to be the subject of the damages claim.  I

11   think that the parties could work out an arrangement or a

12   methodology on what the net damages, meaning the net damage

13   beyond the cost of completing the matter to generate those

14   fees.  I think that is something that would easily be addressed

15   by the parties' counsel.  But until we work that out, I would

16   ask that the entirety of the funds remain in the escrow

17   account.  If we could agree on a cost piece that ought to go to

18   Handler to generate that fee, we could agree on the cost piece.

19   The balance would be the profits, if you will, that are the

20   subject of the damage claim.  We believe that plaintiff can

21   meet the requirement of the -- if you want to label it as

22   attachment under New York law -- because we don't trust that

23   these fees will be kept and available for damages.  We have yet

24   to receive back the confidential information that by contract

25   Mr. Handler is obligated to turn back.  We still don't have

1    that.

2           Mr. Handler is now saying in the papers that he needs

3    the money.  We assume that that means that he is going to spend

4    the money and it is not going to be available.

5           He is a partner in a law firm, he is gainfully

6    employed, he is working on other matters beyond the matters

7    which he took from Spar & Bernstein.

8           I would submit, your Honor, that it is an equitable

9    process to do it this way, equitable to both parties.

10          Finally, I would suggest that the involvement of this

11   Court through a magistrate or some other special master is

12   appropriate, because the alternative is going to say 50

13   separate courts where Mr. Handler is currently appearing, has

14   the case relationship with that bench, we have no assurance

15   that there is going to be a consistent approach followed in all

16   50 cases, and it is simply one argument to one master or

17   magistrate, and we can resolve it in one place fairly and

18   consistently.

19          THE COURT:  So you want me to have a magistrate or a

20   special master come up to speed on 50 different cases --

21          MR. KAUFMAN:  Well --

22          THE COURT:  -- because you think that Mr. Handler has

23   a home court advantage because he is representing the parties

24   before various judges in various state courts?

25          Your client is engaged in the same kind of practice,

F5b4Spac

1    isn't he?

2                 MR. KAUFMAN:  That's right.

3                 THE COURT:  I bet he knows those judges better --

4                 MR. KAUFMAN:  Maybe but that --

5                 THE COURT:  -- than Mr. Handler.

6                 MR. KAUFMAN:  -- was just one point.

7            If I could just finish, your Honor, the answer to

8    that.  Getting up to speed on 50 cases may be overstating the

9    scope of what has to be done.  I think these are personal

10   injury cases.  A certain amount of work has been done up to the

11   point the case left.  A certain amount of work remained to be

12   done after the case left.  And it would seem to me to be

13   subject to judgments that can be fairly and consistently made

14   by one fact finder based upon I think a concise set of

15   stipulated information that could be provided by the parties.

16   I don't think there is going to be a dispute about what was

17   done; it's simply a matter of allocating that.  We think that

18   would be fairly and consistently done by one person.

19                THE COURT:  It is really sad that the parties

20   themselves can't agree on allocation.  You realize that there

21   will be substantial transaction costs involved with, among

22   other things, the appointment of a special master?

23                MR. KAUFMAN:  I think, your Honor, that if given an

24   opportunity, we may very well be able to reach that agreement.

25   The parties have not done that up to this point.  The master

F5b4Spac

1   would be available to resolve it if the stipulations don't set

2   it forth, and we're perfectly able and willing to work directly

3   with counsel to work that out, or the clients one-on-one

4   without counsel can do that.  Our problem was we didn't want to

5   do that as counsel for the plaintiff directly with Mr. Handler.

6   I thought that was very inappropriate.  That's what we have

7   been asked to do, that we deal directly with Mr. Handler.  I

8   didn't think that was right.

9           THE COURT:  Apparently, Mr. Handler and his counsel

10  are perfectly fine with that.  Do you still object to it?

11          MR. KAUFMAN:  I'm uncomfortable with it simply because

12  we had a larger dispute going on between the parties, and

13  sometimes you inevitably get into other disputes that are going

14  on between the parties.  I'm not comfortable dealing directly

15  with the defendant on that.  From an ethical standpoint, I

16  don't want to be accused later.

17          THE COURT:  But if the defendant consents and his

18  counsel consents, what is the harm?

19          MR. KAUFMAN:  If we're not going to be called as a

20  witness in those disputes because we're doing that kind of

21  interface, if Mr. Scalise will stipulate to that, then maybe

22  that is possible.  But I don't want to become a witness in the

23  case.  We're counsel for our client.

24          THE COURT:  What about that, Mr. Scalise?

25          MR. SCALISE:  Your Honor, I'm a little confused as to

F5b4Spac

1    what Mr. Kaufman was talking about, about being a witness in

2    the case.

3         THE COURT:  His suggestion is that there could be a

4    tendency, when your client is sitting across the table from

5    Mr. Kaufman, that he could drift into the merits of the case

6    and, thereafter, endeavor offensively to call Mr. Kaufman as a

7    witness and then call for the recusal of Mr. Kaufman.

8         MR. SCALISE:  Now, I understand.  And we would not

9    want that to occur, as I'm sure the Court would not.  I spoke

10   with my client this morning.  He is willing to allow Brian

11   Isaac, who is one of the named partners at the firm that he is

12   at right now, serve as his counsel for purposes of dealing with

13   the attorneys' liens.  So that should help plaintiff in coming

14   up against that issue about being concerned that there might be

15   some type of a conflict or he might be called as a witness.  So

16   I will offer that to the Court and offer that to plaintiff,

17   that he will not be dealing with me in resolving any of the

18   attorneys' lien issues, he could be dealing with Brian Isaac

19   from Pollack, Pollack, Isaac.

20        THE COURT:  Are you able to digest that and comment on

21   it now, Mr. Kaufman?

22        MR. KAUFMAN:  I have digested it.  I can comment on

23   it.  It wasn't that complicated.  I think we would be willing

24   to work directly with Mr. Handler and his counsel.  I might

25   suggest that we could have a representative of Spar & Bernstein

F5b4Spac

1  in that discussion, and that may very well facilitate it.

2          MR. SCALISE:  We have no objection, your Honor.

3          THE COURT:  That could lead to bigger things.  All

4  right.

5          MR. KAUFMAN:  It is always good to think that.  We

6  would have no problem with that.  I took Mr. Scalise's comment

7  as an agreement that we would not be called under any

8  circumstances as a witness if I participated in that way.

9          MR. SCALISE:  Your Honor, I'm not sure there would

10  even be a need for that in light of the fact he is going to be

11  dealing with represented counsel in this case.  It would be

12  Mr. Isaac.

13          THE COURT:  All right.  Let's move on.

14          Mr. Scalise, do you want to be heard with respect to

15  what I will call application for prejudgment attachment?

16          MR. SCALISE:  I certainly would, your Honor.  I think

17  it is shameful.

18          THE COURT:  Okay.  Spare me the invective.

19          I will tell you this:  I think that the parties are

20  going to have to submit briefing on this if you really want to

21  press it, Mr. Kaufman, because while you alluded to a four-part

22  test, I don't know that you can satisfy that four-part test

23  here.  If my understanding is correct, if the parties were to

24  agree in a particular case, let's say, that there's $100,000

25  in attorneys' fees, and just for the sake of this discussion,

F5b4Spac

1    if the parties agreed to a 60/40 split on that $100,000 fee --

2    and it matters not to me which side gets 40 percent or 60

3    percent -- but just for the sake of argument, let's say that it

4    was Mr. Handler that you would agree was entitled to the 60

5    percent of the fee.  If I'm understanding the plaintiff's

6    application, it would be that notwithstanding that agreement

7    that that $60,000 would have to remain in the escrow account

8    until such time as the claims here were adjudicated because the

9    plaintiffs lack confidence in Mr. Handler's ability to satisfy

10   any judgment if they were to succeed on their claims.  Is that

11   more or less a fair statement of what you're seeking to do?

12          MR. KAUFMAN:  Yes, but let me, if I may, your Honor,

13   give you a nuance that I think is important to explain.  We

14   have two parts to the fee.  The $100,000 is the entire fee.

15   I'm assuming that is the example.  $100,000 is the entire free

16   for handling the case.

17          THE COURT:  I was taking disbursements out.  I assume

18   that disbursements, whatever they were, already went to the

19   plaintiff's law firm or to Handler, depending upon what they

20   were documented.  I'm just down to the fee, which is the

21   allocation that would be made with respect to that particular

22   case.

23          MR. KAUFMAN:  Okay.  I take disbursements to mean

24   literally these are case expenses.  So let's move that to the

25   side.

F5b4Spac

1           THE COURT:  Right.

2           MR. KAUFMAN:  The lien that we have been talking about

3     is the lien for the legal work that was done before the

4     departure.  There is a piece of that $100,000 fee that would be

5     the lien amount because that is the work that Spar & Bernstein

6     is entitled to 100 percent of.  If I may give you an example,

7     let's say $50,000 of the hundred is the predeparture lien.

8     That $50,000 goes to the side, and that is in the escrow

9     account that is earmarked to go to Spar & Bernstein because it

10    was their lien.  The other $50,000 is the additional fee beyond

11    the lien amount.  That is what I will take as the example.

12          THE COURT:  Before you go forward, how is this lien

13    amount determined?

14          MR. KAUFMAN:  The lien amount is determined by a

15    judgment, and the judgment, according to a methodology, of what

16    is the value of the time of the services that was put into that

17    matter before the case was transferred to Mr. Handler.  Let's

18    say it got up to, and including completion of discovery,

19    everything before trial preparation, and then the case was

20    settled.  There would be a certain percentage of that case that

21    the parties would recognize that would be the value of the

22    services based on the percentage of the completion of the case

23    by the Spar & Bernstein firm.  There's an approach to that that

24    would need to be developed by the parties jointly -- and I

25    would suggest that there is a reason to do that -- to come up

1   with a methodology that the master could use.  If not, the

2   master would make that judgment based upon what I think would

3   be stipulated information as to what was done or wasn't done by

4   one party or the other party.  That would be how the value of

5   those legal services would be determined as a percentage of the

6   total fee that is obtained in that case.  That's why I thought

7   it needs to be done consistently throughout the 50 cases, not

8   differently by different judges.

9          To answer your Honor's question, assuming that $50,000

10  is the lien valuing of Spar & Bernstein's services, the other

11  $50,000 is what is generated after the case is transferred.

12  That is the subject of the damage claim.  And I suggested in my

13  first remarks that I think it would be fair and appropriate to

14  say there's a certain cost that is associated with

15  Mr. Handler's having completed the case to generate that fee,

16  and I think it would be appropriate for the parties to agree on

17  the cost that went into completing the case, and that that

18  amount at a minimum could be an amount that Mr. Handler would

19  be entitled to.  Let's say that's $10,000, just for my example.

20  That would leave 10,000 for Handler on the cost of completing

21  the case on a cost basis.  The other $40,000 would be the

22  additional fee that I will call the profit after it was

23  transferred.  That's the subject of the damage case; that

24  misrepresentations were made to clients to get them to

25  transfer.  But for those misrepresentations, the fee wouldn't

1    have been generated to the Handler practice, and that is the

2    subject of the damage claim that ought to be reserved until

3    that issue is decided or until the parties can come to an

4    agreement on that.  If your Honor says talk about other things,

5    maybe the parties can agree on a percentage of that excess fee

6    that would be apportioned between the parties to resolve that

7    case.  I don't know.  But if not, then, that $40,000 would be

8    the amount we would like held in the escrow account until the

9    damages issue in this case is decided.  We could agree on a

10   lien amount that should go to Spar & Bernstein.  We could agree

11   on a cost amount that could go to Handler's practice.  And the

12   remainder should be held subject to the damage claim.  Given

13   the opportunity, we could demonstrate to the Court that we meet

14   the four-prong test.

15           THE COURT:  That's a three-tiered calculation for each

16   case.

17           MR. KAUFMAN:  Yes.

18           THE COURT:  I must tell you, when I was sitting up in

19   my chambers thinking about this, I couldn't come up with such a

20   complicated thing.  Why wouldn't the parties just sit down and

21   say, on this particular case, it's 60/40 or 50/50 or 70/30?

22           MR. KAUFMAN:  The parties could do that for the lien

23   amount.  I think the parties could agree as to the lien.  As to

24   damages, that's the big question there.

25           We're perfectly willing to have that conversation, but

1    I don't know --

2          THE COURT:  This just demonstrates to me that the

3    quicker we get this case to trial, the better for everybody.

4          MR. SCALISE:  Your Honor, if I may, you are absolutely

5    correct.  This is a very simple calculation here, using your

6    example.  $100,000 for attorney's fees, one side gets 60, one

7    side gets 40.  That is determined either by agreement or by

8    application to the Court.  I submit that the appropriate

9    application would be to the Court where the case was pending.

10   It makes more sense.  State law, state cases.  That's where it

11   should be done.

12         But more importantly, Judge, what Mr. Kaufman is sort

13   of dancing around, and that's why it is becoming more

14   complicated, he is going back to the prejudgment attachment,

15   which he has no grounds for here.

16         THE COURT:  He may or may not.  I'm a little

17   skeptical, but I'm going to give him the opportunity to brief

18   it because it really hasn't been addressed in the letter.  You

19   pointed me to the test, but I need to learn some more things

20   about this case.

21         MR. KAUFMAN:  Your Honor, I would just add that

22   plaintiff's entire case has been based upon the misconduct that

23   it alleges occurred.  If we're able to prove that, we're able

24   to prove that that misconduct led Mr. Handler to have this work

25   that he would not otherwise have.  So those are the damages

1    that were sustained here by the misconduct, and that's why it

2    is complicated, but no damage case is ever that simple. You

3    have to prove your damages. Just to say that Mr. Handler is

4    entitled --

5              THE COURT: I do understand that if you have to go to

6    trial, you're going to have to prove essentially the value of

7    your lien. You're going to have to go through this complicated

8    analysis. It is going to involve time, money, and a jury's

9    attention. And it just strikes me that the transaction costs

10   associated with this are going to invoke the old saw that the

11   game is not going to be worth the candle even if you're right

12   on your damages claim. That's all.

13             MR. KAUFMAN: I don't disagree, your Honor, and we

14   have always been willing to that have conversation with counsel

15   for the defendant.

16             THE COURT: I think the defendant and his counsel

17   should get in a room with you and one of your clients and just

18   thrash this out.

19             MR. KAUFMAN: Happy to do it.

20             THE COURT: Before I set a briefing schedule for this

21   motion, I want to deal with the discovery disputes because that

22   bears directly on the hearing that we have scheduled for next

23   week.

24             Mr. Scheiman, briefly, do you want to be heard?

25             MR. SCHEIMAN: Yes, your Honor. Very briefly.

1    I do want to start by mentioning that counsel for

2 defendant and Mr. Kaufman and myself have come fairly close to

3 an agreement on several issues, and those issues would impact

4 what we need in discovery.  So a full-blown discovery dispute

5 that we believe we have may be impacted by some agreements.  I

6 can go over those agreements first if your Honor would like --

7    THE COURT:  Let's cut to the chase.  Let's go to what

8 is in dispute at the moment.

9    MR. SCHEIMAN:  In dispute at the moment, your Honor,

10 is everything that we asked for in our preliminary injunction

11 hearing.  We believe that --

12    THE COURT:  Look, so then, first, as I understand it,

13 the defendant did a dump of 20,000 emails in native format.

14    MR. SCHEIMAN:  Yes, your Honor.

15    THE COURT:  Right.  Mr. Scalise, that is not an

16 appropriate response to a document request.  At the same time,

17 the plaintiffs, in preparation for this preliminary injunction

18 hearing, want every document back to January 1, 2012.  That

19 makes no sense to me, either, Mr. Scheiman.  I'm going to

20 require the defendant to produce documents from January 1, 2014

21 to the present in a format that shows that they have been

22 reviewed.

23    And Mr. Scalise, is there any reason that you can't

24 provide those emails in a format that is searchable by the

25 close of business on Wednesday?

F5b4Spac

1      MR. SCALISE:  Your Honor, I believe we can.  One thing

2   the Court should be aware of, my client is on trial this week.

3   He got a plaintiff's verdict on one of the cases that actually

4   was transferred to him.  It was a bifurcated trial.  So today

5   he is starting the damages aspect.  He is out there trying to

6   win money for his client; obviously, if he wins on that, money

7   for the plaintiff here.  I will speak to him about that, but I

8   know that he is in the process of preparing for that.

9      One of the things, your Honor, we had proposed to

10   plaintiff's counsel, if they would shorten their demand to that

11   period of time that the Court has indicated, that we would

12   likely be able to do that.

13      THE COURT:  I have just shortened it for the purpose

14   of this hearing, so that Mr. Handler's deposition can be

15   taken --

16      MR. SCALISE:  I understand.

17      THE COURT:  -- in this case.

18      MR. SCALISE:  Your Honor, I believe that he will be

19   able to have his computer guy pull off that information.  I

20   will not be able to speak to Mr. Handler until a little bit

21   later today when he is done with court.

22      THE COURT:  Mr. Scheiman, what sort of format do you

23   want it produced in?  TIFF?  Concordance?

24      MR. SCHEIMAN:  TIFF would be fine.

25      THE COURT:  So produce it in a TIFF format,

F5b4Spac

1    Mr. Scalise, by close of business on Wednesday.

2            MR. SCHEIMAN:  Your Honor, may I be briefly heard on

3    the date that you chose.  We believe that there was a migration

4    of confidential information that goes back at least as far as

5    6/30/13.  It should not be a hard thing to run a computer

6    search for the additional six months.

7            THE COURT:  Where is that pled anywhere?  What I saw

8    in the pleadings on this motion is that you had him enter into

9    a confidentiality agreement in July of last year.  So I'm

10   giving you six months before that.

11           MR. SCHEIMAN:  Your Honor, there is more than just a

12   confidentiality agreement at stake here.  There's the breach of

13   contract.

14           THE COURT:  I understand all that.  Am I really

15   supposed to think at this point that Handler was plotting his

16   departure from the firm more than a year before he left and

17   stealing files?

18           MR. SCHEIMAN:  That may be the case, your Honor, but

19   that's not my argument.  My argument, your Honor, is that there

20   are clients that Mr. Handler does not represent.  In his files,

21   there's confidential information that he should not be in

22   possession of.  Those documents and files should come back to

23   Spar & Bernstein because they have the clients still, and this

24   is client material.  It is confidential material because it is

25   based on client's files, and it should not be in the possession

F5b4Spac

1    of Mr. Handler.  The discovery we seek is to find out exactly

2    what he still has with respect to non-represented clients.

3              THE COURT:  What is the factual basis for your

4    assertion just now that you have reason to believe that since

5    June of 2013, he's been migrating the firm's files to some

6    other repository?

7              MR. SCHEIMAN:  I think, your Honor, our analysis of

8    his telephone and other records show that, going back beyond

9    the 6/30/13 date that I mentioned, there's been a constant

10   sending home of files.  When you're working on a file, that's

11   one thing, even though it is probably a breach of the firm's

12   rules, but to keep those files is just totally improper.  And

13   to have possession of those places clients in danger and should

14   not be countenanced.  We have a right to have the preliminary

15   injunction, permanent injunction, require those documents be

16   returned to Spar & Bernstein, and we have a good faith basis to

17   believe that those migrations one by one -- not necessarily in

18   bulk -- occurred, and we want to test that as part of

19   discovery.  It is not a hard search for them to make.

20             THE COURT:  How much longer would it take,

21   Mr. Scalise, back to June of 2013?

22             MR. SCALISE:  It would take awhile, your Honor.  If I

23   could clarify something that I think --

24             THE COURT:  Why would it take longer?

25             MR. SCALISE:  To go back to that period of time?  To

F5b4Spac

1    go back, we're talking about, Judge, as I indicated in my

2    letter to the Court here, a number of emails that are out

3    there, just averaging 20 emails a day, 350 days, to take into

4    account for holidays and what-have-you.  That's over 20 emails

5    there.  Mr. Handler, once again, is out there trying to service

6    his clients.

7         What they're asking him to do is something that they

8    have asked no other attorney or paralegal who has left this

9    firm to do.  This is unprecedented, Judge, and it is part of

10   their desire to harass, intimidate, and retaliate against him

11   for the fact that clients chose him after he was terminated,

12   they chose him, to go with him.

13        Respectfully, Judge, we can't look at this case in a

14   vacuum here.  Mr. Handler was an excellent employee for close

15   to 10 years.  He ran their PI department.  He was the guy.  He

16   had an excellent relationship with Mr. Bernstein.  He had

17   recovered over $30 million for his clients.  He made a

18   significant amount of money for the firm.

19        This all started, your Honor, in January of 2014, when

20   Mr. Lewis came into the firm.  That's what this is about,

21   Judge.  So what they're asking us to do here is overburdensome

22   and harassing.

23        If I can, Judge, with respect to the claims that are

24   going to be litigated at the preliminary or permanent

25   injunction hearing, there are three of them:  One is breach

1    of -- we took their trade secrets, which we believe is not the

2    case.  We took confidential information and we're using that.

3    And number three, we're improperly soliciting.  With respect to

4    the last one, Mr. Handler has not contacted any client since

5    several weeks after he was terminated, and he's agreed not to.

6    That last issue, Judge, can come off.

7         THE COURT:  Look, I'm going to hold now to January 1,

8    2014, which are to be produced by the close of business on

9    Wednesday in preparation for the hearing.

10        Mr. Scheiman, if you demonstrate that there was

11   migration and improper conduct from January 1, 2014, to the

12   present, you're going to get the very relief you want.  And I

13   don't think that we should be delaying this hearing.  Because

14   otherwise, I will just have to give him a little more time to

15   produce emails to 2013, and it's diminishing returns.

16        MR. SCHEIMAN:  Your Honor --

17        THE COURT:  You can still run searches in the emails

18   you've got; right?

19        MR. SCHEIMAN:  Laboriously, one at a time.

20        THE COURT:  You know what you're looking for.

21        January 1, 2014.

22        When is Handler going to be finished with this damages

23   trial?

24        MR. SCALISE:  We are hopeful it will be Wednesday,

25   your Honor, so that he can be deposed on Thursday.  As it is

F5b4Spac

1    right now, your Honor, we have agreed to depositions tomorrow

2    and Wednesday of plaintiff and also of former employees of

3    plaintiff.

4            THE COURT:  All right.

5            MR. KAUFMAN:  Just one clarification because I don't

6    want to have an argument come up in the deposition.  I didn't

7    hear you say that despite the limitation on the document

8    production we can't ask Mr. Handler about what went on before

9    January 14th.

10           THE COURT:  Certainly, you can ask him about anything

11   during the deposition.  I'm just drawing a line in the sand to

12   make sure that some document production has been done so that

13   you can do the deposition.

14           All right.  What other issues relating to preparation

15   for the hearing do we need to address other than recognizing

16   that I'm going to fix a briefing schedule on the motion for

17   prejudgment attachment?

18           MR. SCHEIMAN:  Yes, your Honor, very briefly.

19           There are still answers to interrogatories that have

20   not been addressed in any form whatsoever.  They would be a

21   great aid in preparing for the deposition.  It might even

22   shorten the length of the deposition if we have those answers.

23           THE COURT:  There is an agreement that he is going to

24   respond to them.

25           MR. SCHEIMAN:  I thought so, also.

1    MR. SCALISE:  Yes, your Honor, if I may with respect

2    to this.

3    I had suggested to Mr. Scheiman, rather than having

4    Mr. Handler having to go through the answers to the

5    interrogatories, that those questions could be proposed at the

6    deposition.  We're under a very short timetable, Judge.  We had

7    to produce documents.  We had to respond.  We had to answer the

8    complaint in this matter because no answer had been put in

9    because Mr. Handler had initially made a request to make a Rule

10   12(b)(6) motion, which we agreed the last time not to occur.

11   We had to get up and running with respect to the various

12   motions, motion letters, that the plaintiff was requesting.  We

13   simply ran out of time.  And Mr. Handler, once again, is on

14   trial trying to win money that will ultimately benefit

15   plaintiff.

16   So, respectfully, Judge, we would ask that the Court

17   not order him to have to respond to that.  That's an additional

18   burden between now and Mr. Handler's deposition.  All of those

19   questions, that if you were to look at the interrogatories, all

20   of those things can and should be asked at a deposition.  If we

21   had 30 days, Judge, in order to get ready for this hearing,

22   that would be a different story.  We are under an extremely

23   difficult short time frame here.  And your Honor, I'm a sole

24   practitioner.  I'm doing the best I can.  I have other clients

25   that I'm dealing with.  Mr. Handler has other matters that he's

F5b4Spac

1   dealing with here.  It is not necessary, Judge, and we need the

2   Court's help in understanding that this is not something that

3   should be needed and an extra burden that's being put on

4   Mr. Handler.  They don't need it, Judge, in order to do their

5   deposition.  They don't even need it, Judge, for the hearing.

6           THE COURT:  Look, life is short, and art is long.

7   Okay.  There are only 15 or so interrogatories, a total of 18

8   interrogatories.  Mr. Scalise, back on May 5, when you

9   submitted the joint letter concerning the discovery dispute,

10  you told me that you were in the midst of preparing the

11  responses to plaintiff's interrogatories but you had to stop to

12  respond to the letter on May 5.  Okay.  It's six days later.

13  There is no reason you can't answer those 18 interrogatories,

14  and you'll provide answers to interrogatories as best you can

15  by close of business on Wednesday so that Mr. Scheiman has them

16  before he takes your client's deposition.  All right.

17          MR. SCALISE:  Yes, your Honor.

18          THE COURT:  Anything else?

19          MR. SCHEIMAN:  Not from me, your Honor.

20          MR. SCALISE:  Your Honor, I think you had made a

21  scheduling order with respect to the hearing.  There was to be

22  an exchange of documents and witnesses, I believe, by

23  Wednesday.

24          THE COURT:  I think we better move that to Friday.

25          MR. SCALISE:  Thank you, your Honor.

F5b4Spac

1          THE COURT:  Are we going to be able to live with going

2   forward on Monday, or should I move it to Tuesday?

3          MR. SCALISE:  Your Honor, I would, respectfully, ask

4   that it be moved to Tuesday under the circumstances.

5          THE COURT:  If you're in agreement, I will move it to

6   Tuesday, the 19th --

7          MR. KAUFMAN:  Your Honor, I would.

8          THE COURT:  -- if that helps.

9          MR. KAUFMAN:  I think that would work.  The big "if"

10  is we still haven't been able to pin an agreement down with

11  Mr. Scalise on the things that we're taking off the table for

12  that hearing.  If we can agree on that, I think it is clear to

13  me that those two days will be enough.  If we can't agree --

14  and agreement has been ephemeral, I will leave it at

15  that --we'll have a problem with a two-day hearing.

16          I would like to go out in the hallway and see if we

17  can resolve it.

18          THE COURT:  I will hold it on May 18th.  If you reach

19  an agreement, you can write me a joint one-sentence letter, and

20  I will move it to May 19th.  Otherwise, I will be ready to go

21  at 10 a.m., on May 18.

22          With respect to this motion for prejudgment

23  attachment, is this really something you want to be dealing

24  with between --

25          MR. KAUFMAN:  No, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1          THE COURT:  Why don't I fix a schedule for that after

2     we see what takes place between now and next Monday and what

3     happens at the hearing.

4          MR. KAUFMAN:  I'm fine with that.  I assume

5     Mr. Scalise will have his client hold all funds until we work

6     this out.

7          THE COURT:  I'm going to issue an order today, as I

8     said at the outset of this hearing, directing the establishment

9     of the escrow account specific to this matter.

10          MR. KAUFMAN:  All fees go in this until we work it

11     out.

12          THE COURT:  Okay.

13          MR. KAUFMAN:  Thank you.

14          MR. SCALISE:  Your Honor, one last thing with respect

15     to this agreement.  We might need a little bit of the Court's

16     assistance in this.  We have agreed that Mr. Handler will not

17     make any further statements, disparaging statements -- not that

18     he did, to begin with -- but we're agreeing not to and the

19     plaintiffs are agreeing not to do so, and that we are not going

20     to be soliciting any additional clients.  There may be clients

21     that will come to Mr. Handler, but it is not going to be the

22     result of his actions or the actions of anybody else.

23          The one sticking issue that I have with plaintiff's

24     counsel is we're going to have that so ordered by the Court.

25     But they want to put in there almost a presumption that if they

F5b4Spac

1    deem it being violated that the burden appears on us to come

2    forth to the Court and have the Court vacate this order that

3    would have been put in place by our stipulation, and I think

4    that's a burden.  If plaintiff believes that we have somehow

5    violated or if we believe that the plaintiff has somehow

6    violated the non-disparagement, I think it is appropriate to

7    make application to the Court and have that addressed by the

8    Court and not have an order out there that that has to be

9    vacated by the other party.  It is almost like you're presumed

10   guilty before you have been shown to have been guilty.  That

11   seems to be the sticking point, your Honor.  I have spoken to

12   plaintiff's counsel, and I said that I would take direction

13   from the court here.  If we can resolve that, we resolve this

14   issue, we would be able to push the hearing to the 19th,

15   Tuesday, because that was our only sticking point.

16          MR. SCHEIMAN:  Your Honor, may I be heard briefly?

17          One of the reasons that we designed this agreement the

18   way it's designed is that we believe that we're giving up our

19   rights to a preliminary injunction to a certain extent with

20   respect to disparagement, which we believe occurred --

21          THE COURT:  I don't have the benefit of whatever this

22   draft agreement is, and so I don't understand, other than I'm

23   gathering it is self-executing, so how can I get involved in

24   something like that.  If you don't reach agreement, you're

25   going to ask me to decide what's appropriate.

F5b4Spac

1          MR. SCHEIMAN:  There are only two ways, your Honor,

2     that I can think of.  One is we submit the agreement to you and

3     tell you that to which we have already agreed.  And the other

4     way is for me to read the paragraph that is in contention now

5     and get some guidance.

6          THE COURT:  I think you should try to work it out.

7     All right.  That's what I think, because this is equitable

8     relief you're seeking, and I've got to rule on the matter

9     ultimately if you don't reach agreement, and that's what I'm

10    here for, to resolve disputes.  I have tried my best to try to

11    help you avoid continuing this dispute, but to my

12    disappointment, letters and applications keep coming in over

13    the transom.

14         MR. SCHEIMAN:  Your Honor, we have tried very

15    religiously to try to reach this agreement, and we will

16    continue to try.

17         THE COURT:  All right.  I'm sure you have.  So keep

18    working on it.  All right.

19              If not, I will see you on Monday, at 10 a.m.

20         MR. KAUFMAN:  Thank you, your Honor.

21         MR. SCALISE:  Thank you, your Honor.

22         MR. SCHEIMAN:  Thank you, your Honor.

23         (Adjourned)

24

25